IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANDRA SIMS,

      Plaintiff,                      No. CIV S-05-2502 PAN (JFM)

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                    <u>ORDER</u>

_____/

        This case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny Plaintiff's motion for summary judgment; deny the Commissioner's cross-motion for summary judgment, and remand this case for further proceedings consistent with this order.

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated June 23, 2005, the ALJ determined Plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. The ALJ found Plaintiff has severe impairments of elbow pain and right wrist pain, but that these impairments do not meet or medically equal a listed impairment; Plaintiff's allegations regarding the severity of her limitations are not entirely credible; Plaintiff retains the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, stand, and walk up to six hours in an eight hour workday, and to perform frequent manipulative activities; Plaintiff has the residual functional capacity to perform

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

a significant range of light work; there are a significant number of jobs in the national economy that Plaintiff could perform, including parking lot attendant and sales attendant; and Plaintiff is not disabled.  Administrative Transcript ("AT") 28.

Plaintiff contends that the ALJ committed numerous errors.  First, Plaintiff argues that the ALJ's assessment of Plaintiff's residual functional capacity is not supported by substantial evidence.  Second, Plaintiff states that the ALJ failed to resolve conflicts in the vocational evidence.  Finally, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discrediting the medical opinion of Plaintiff's treating physician.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

   a. The ALJ's Assessment of Plaintiff's Residual Functional Capacity Is Not Supported by Substantial Evidence in the Record.

The ALJ found Plaintiff capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently. AT 26. The ALJ also determined that Plaintiff was capable of frequent manipulative activities. Id. In making this determination, the ALJ evaluated the medical evidence in the record as well as Plaintiff's subjective complaints of pain and impairment. AT 22-26. The ALJ's finding is not supported by substantial evidence in the record.

Social Security Ruling (SSR) 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p; cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir.2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations"). Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

The ALJ described in detail the medical evidence in the record. In particular, the ALJ placed great weight in the medical opinion of Dr. Kumar, an examining physician who saw Plaintiff on multiple occasions, in addition to providing evidence at the administrative hearings in the form of answered interrogatories and direct testimony. AT 23, 25. While the ALJ stated that he placed "substantial weight" in Dr. Kumar's findings, id., it is apparent that the ALJ failed to properly evaluate her and other medical opinions in the record prior to making her findings about Plaintiff's residual functional capacity.

/////

The record contains four distinct pieces of evidence from Dr. Kumar. The first is Dr. Kumar's examination of Plaintiff on June 1, 2003. AT 259-64. Dr. Kumar found some restriction in the movement of Plaintiff's cervical spine; however, she noted that Plaintiff appeared to move more easily when unobserved. AT 263. Dr. Kumar, a specialist in physical medicine rehabilitation and pain management, also found diffuse tenderness in both of Plaintiff's elbows. Id. Based upon this initial examination, Dr. Kumar determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, with frequent gripping and fine manipulative activities, as well as frequent stooping and bending AT 263-64.

Dr. Kumar responded to a series of interrogatories on June 18, 2004. AT 360-64. As a result of being made aware of additional tests not provided prior to her initial evaluation of Plaintiff, Dr. Kumar amended her previous functional assessment. AT 362. Upon review of EMG and nerve conduction studies, Dr. Kumar reduced Plaintiff's ability to perform gripping and manipulative activities from frequent to occasional. Id. Dr. Kumar reaffirmed her opinion that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. AT 363.

On July 25, 2004, Dr. Kumar examined Plaintiff for a second time. Dr. Kumar made few diagnostic findings of impairment, noting inconsistencies between the examination and Plaintiff's activities before and after the examination. AT 381-82. Following this examination, Dr. Kumar found Plaintiff capable of lifting a smaller amount than she had previously stated -15 pounds occasionally and 10 pounds frequently. Dr. Kumar reaffirmed her opinion from the interrogatory that Plaintiff was capable of occasional gripping and fine manipulative activities with both hands. AT 382. She also found Plaintiff able to perform frequent bending and stooping activities. Id.

Dr. Kumar's final contact with this application for benefits occurred during the administrative hearing on May 24, 2005. AT 88-100. The ALJ noted that Dr. Kumar testified that Plaintiff was capable of performing work at the light exertional level. Among other

/////

requirements, light work demands an ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

The ALJ places "substantial weight" on each of Dr. Kumar's first three functional assessments. AT 23, 25. However, at no point does the ALJ reconcile the inconsistencies in these opinions. Over the course of three opinions, Dr. Kumar reduced her assessment of Plaintiff ability to occasionally lift and carry from 20 to 15 pounds. In addition, Dr. Kumar changed her opinion as it concerned Plaintiff's ability to manipulate from frequent to occasional. Upon each evaluation relied upon by the ALJ, Dr. Kumar gave a more restrictive assessment of Plaintiff's functional capacity.

The ALJ placed identical weights on three different medical opinions offered by one examining physician. Nothing in the ALJ's findings explains this logical inconsistency. The ALJ's reliance on these differing medical opinions cannot be said to be substantial evidence supporting the ALJ's conclusion about Plaintiff's residual functional capacity.

None of the other evidence relied upon by the ALJ lends any support to the conclusion that Plaintiff is able to lift and carry 20 pounds occasionally and 10 pounds frequently, as well as perform frequent manipulative activities. AT 26. The ALJ's statement that Dr. Kumar testified that Plaintiff was capable of light work is not supported by the record. At the administrative hearing, Dr. Kumar explained the basis for her findings, in addition to enduring cross-examination about Plaintiff's muscular atrophy and the differences between her opinion and that of Plaintiff's treating physician. At no point during her testimony did Dr. Kumar offer any assessment of Plaintiff's functional capacity.

The ALJ is charged with fairly evaluating all of the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The failure to accurately evaluate the record in its entirety can be error. See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)(concluding that the failure to accurately paraphrase the record material was error); Holohan v. Massanari, 246 F.3d 1195, 1203-05 (9th Cir. 2001)(reversing adverse credibility finding where the ALJ selectively

quoted doctor's records out of context).  Dr. Kumar gave no testimony at the hearing supporting the ALJ's conclusions about Plaintiff's ability to perform light work.

Similarly, the ALJ misstates the opinion of the State Agency physician who evaluated Plaintiff's medical record on December 20, 2001.  AT 216-23.  The ALJ stated that the State Agency determined that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently.  AT 22.  The ALJ gave some weight to this opinion.  Id. However, the State Agency actually found Plaintiff capable of lifting only 20 pounds occasionally and 10 pounds frequently.  Any ambiguity about the State Agency physician's conclusions is overcome by frequent referrals in the State Agency paperwork to Plaintiff's ability to perform light work.  AT 233-35, 237.[2]

None of the other treating or examining physician's in the record provides a functional assessment as liberal as the ALJ's.  On April 27, 2004, Plaintiff's treating physician, Dr. Pucelik, found Plaintiff capable of lifting and carrying no more than 5 pounds occasionally, and limited her to rare handling and fingering.  AT 358.  In a second assessment completed on May 18, 2004, Dr. Pucelik found Plaintiff capable of occasionally lifting 5 pounds and rarely lifting 10 pounds.  AT 368.  Dr. Pucelik limited Plaintiff to a maximum of three hours sitting and precluded anything more than rare use of the hands and arms.  AT 369.

Furthermore, Plaintiff's own complaints describe a level of function significantly more limited than that found by the ALJ.  The ALJ discredits these complaints.  AT 26.  However, the record does not contain clear and convincing reasons to support the ALJ's discrediting of Plaintiff's subjective complaints.

---

[2]Unfortunately, this type of error characterizes the ALJ's opinion.  In addition, to her misstatement regarding Dr. Kumar's testimony, the ALJ also contradicted her own findings as they concerned Plaintiff's severe impairments.  The ALJ initially noted that Plaintiff suffered from the severe impairments of neck pain, low back pain, bilateral elbow pain, and hand pain. AT 22.  However, in her findings, the ALJ stated only that Plaintiff suffered from severe elbow pain and right wrist pain.  AT 28.  Assuming that the nonspecific finding of elbow pain describes both elbows, the ALJ's ultimate findings ignore Plaintiff's neck, lower back, or left wrist.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee, 94 F.3d at 522. If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). Without affirmative evidence of malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

1   The ALJ provided the legal framework within which she assessed Plaintiff's
2   credibility. AT 26. However, upon application of that framework, the ALJ failed to provide
3   sufficient reasoning to support her conclusion that Plaintiff was not credible. The ALJ noted
4   simply that Plaintiff watched television daily and reported that she did not exercise. In addition,
5   the ALJ noted that Plaintiff was observed by Dr. Kumar using her extremities in the waiting
6   room prior to her examination on July 25, 2004.

7   The ALJ provides no further explanation of his statement that Plaintiff watched
8   television and did not exercise. There is no attempt by the ALJ to link these activities to any of
9   Plaintiff's complaints or impairments. The ALJ is obligated to identify what testimony is not
10  credible and what complaints are undermined by that testimony. Dodrill v. Shalala, 12 F.3d 915,
11  918 (9th Cir. 1993). It is apparent that she did not do so in this case. A mere observation that
12  Plaintiff engages in sedentary behavior that seems to confirm her complaints of disabling pain
13  can hardly be considered clear and convincing.

14  Furthermore, the ALJ provides no evaluation of Dr. Kumar's observation that
15  Plaintiff used her hands while in the examining room. By its very nature, it is clear that this
16  finding undermines Plaintiff's complaints of disabling hand pain. Regardless, without more, this
17  sole finding consisting of a single observation from one person does not provide the quantum of
18  clear and convincing evidence necessary to support the ALJ's credibility determination.

19  Substantial evidence does not support the ALJ's finding of Plaintiff's residual
20  functional capacity. The ALJ's analysis of the myriad medical opinions in the record is either
21  incomplete or inaccurate. Furthermore, the ALJ's weighing of Plaintiff's subjective complaints
22  fails to meet the clear and convincing standard. Along with other reasons cited below, remand is
23  required in order to permit the ALJ to properly evaluate Plaintiff's residual functional capacity
24  based upon all of the evidence in the record.
25  /////
26  /////

b. <u>The ALJ Erred by Not Resolving the Conflict in the Vocational Evidence.</u>

The ALJ found that Plaintiff was able to perform several jobs that existed in significant numbers in the national economy. AT 27. As support for this finding, the ALJ relied upon the testimony of a single vocational expert, ignoring contrary testimony from two other vocational experts. This finding was in error. The ALJ provided no justification for his reliance on this particular vocational expert. Furthermore, in reaching his conclusion, the ALJ failed to inform the vocational expert of the full extent of Plaintiff's impairments.

The Appeals Council vacated a prior decision of the ALJ issued on August 15, 2003, that found Plaintiff not disabled. AT 284. Prior to issuing her findings in that prior decision, the ALJ took testimony from a vocational expert. Contrary to the testimony of the vocational expert, the ALJ found that Plaintiff capable of performing her past relevant work. AT 276.

At the prior administrative hearing held on February 25, 2003, Mr. Schmidt, the vocational expert, concluded that Plaintiff could not perform her past relevant work as either a assembly line hand packer or housekeeper. He further opined that an individual able to perform light work with occasional gripping and fine manipulation on both hands could not perform any work in the national economy. AT 51. This unavailability of work remained when the restriction to occasional manipulation was limited to the left hand. AT 50.

Following remand, the ALJ took testimony from two additional vocational experts. Mr. Meyers testified on May 4, 2004, and opined that a person limited to occasionally lifting and carrying five pounds could not find employment in the national economy. In addition, Mr. Meyers stated that a person limited to light work, but able to perform occasional manipulative activities would be able to work as an amusement park attendant and would be capable of doing 30 percent of the available counter clerk positions. AT 70.

Mr. Deltmer, testified on January 25, 2005. Plaintiff asked this vocational expert to assume a person with Plaintiff's education and experience, who was limited to lifting and

1  carrying 15 pounds occasionally, 10 pounds frequently, and who could only do occasional

2  manipulative activities.  AT 81.  In response, Mr. Schmidt stated that approximately 3,500 jobs

3  as a parking lot attendant and 6,400 jobs as a sales attendant would be available.  AT 82.

4         The case law provides no guidance as to the proper standard for weighing

5  vocational expert testimony.  As an expert, it must certainly be a higher standard than that

6  applicable to lay witnesses.  "[L]ay witness testimony as to a claimant's symptoms or how an

7  impairment affects ability to work is competent evidence, and therefore cannot be disregarded

8  without comment."  Nguyen, 100 F.3d at 1467; see also Dodrill v. Shalala, 12 F.3d 915, 918-19

9  (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and

10 daily activities are competent to testify to condition).  "If the ALJ wishes to discount the

11 testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill,

12 12 F.3d at 919.  However, the standard is not likely to be greater than the specific and legitimate

13 reasons required for medical opinions.  See Lester v. Chater, 81 F.3d 821 at 830 (9th Cir. 1995).

14        In this case, the court need not determine the appropriate standard because the

15 ALJ gave no reasons for failing to evaluate the opinions from the three vocational experts

16 consulted.  This was a critical error as the distinction between the opinions of the vocational

17 experts concerning Plaintiff's ability to perform light work with occasional or rare manipulative

18 activities is central to any finding of disability.

19        As explained below, the ALJ's erroneous weighing of the opinion of Plaintiff's

20 treating physician requires a judicial finding that Plaintiff has the residual functional capacity to

21 lift no more than 10 pounds occasionally and rarely use her hands for manipulative activities.  In

22 this case, the ALJ defined rare as less than one-third of the time.  AT 69.  This is similar to

23 occasional, which translates to "very little up to one-third of the time."  SSR 83-10.  However,

24 Dr. Pucelik, Plaintiff's treating physician, gave his opinion based upon an understanding that rare

25 meant "less than one hour per day."  AT 368.  It is this limitation to less than one hour per day

26 that must be credited.

1       Both Mr. Schmidt and Mr. Meyers found that persons limited to occasional
2  manipulation or less would be unable to perform work that is available in the national economy.
3  AT 50, 69.  Were the court to credit their opinions, a finding of disability would be warranted.
4  See Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir.
5  1987)(holding that generally, the Court will direct the award of benefits "in cases where no
6  useful purpose would be served by further administrative proceedings or where the record has
7  been thoroughly developed").
8       However, the ALJ relied upon the opinion of Mr. Deltmer who found nearly
9  10,000 jobs Plaintiff could perform.  AT 81.  The ALJ gave no reason for her decision to credit
10 Mr. Deltmer's opinion over that of Mr. Schmidt or Mr. Meyers.  Given that the various opinions
11 lead to markedly different results, remand is necessary in order to permit the ALJ to properly
12 explain the reasoning behind the weight she assigned to the testimony of the vocational experts.
13      Furthermore, if the ALJ chooses to rely on the opinion of Mr. Deltmer, remand is
14 necessary in order to permit the ALJ to pose a proper hypothetical question that captures all of
15 Plaintiff's functional limitations.  The ALJ did not elicit an opinion from Mr. Deltmer about the
16 availability of positions for someone who could only perform rare manipulation.  Without this
17 key functional limitation, Mr. Deltmer's opinion cannot be relied upon.
18      Hypothetical questions posed to a vocational expert must set out all the
19 substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.
20 Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's
21 limitations, the expert's testimony as to jobs in the national economy the claimant can perform
22 has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the
23 ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations
24 of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination
25 must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d
26 418, 422-23 (9th Cir. 1988).

1  The ALJ failed to include any limitation to rare manipulation in his hypothetical
2  to Mr. Deltmer.  Consequently, reliance on Mr. Deltmer's opinion was in error.  Remand is
3  necessary in order to permit the ALJ to properly evaluate the testimony of the vocational experts
4  and, if necessary, permit reliance upon a hypothetical question that presents to the vocational
5  expert the true nature of Plaintiff's residual functional capacity.
6  The Commissioner argues that the ALJ was not required to address the opinion of
7  Mr. Schmidt because his testimony was obtained during the first administrative hearing in this
8  case, prior to the remand order from the Appeals Council.  (Def.'s Mot. Summ. J. 8:22-24.)
9  According to the Commissioner, as a result of the remand, the only decision before the court is
10 the ALJ opinion filed June 23, 2005.  This argument fails to properly characterize the scope of
11 this court's review or the basis of Plaintiff's complaint of error.
12 Appeals can be made only from final decisions.  The Social Security Act grants
13 the Commissioner the authority to define "final decision."  42 U.S.C. § 405(a); Sims v. Apfel,
14 530 U.S. 103, 105, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); Weinberger v. Salfi, 422 U.S. 749,
15 766, 95 S.Ct. 2457, 2467 (1975)("The statutory scheme is thus one in which the Secretary may
16 specify such requirements for exhaustion as he deems serve his own interests in effective and
17 efficient administration.")  The regulations permit judicial court review only after a plaintiff has
18 completed the administrative process.  20 C.F.R. § 404.900(a)(5).  This process requires an initial
19 determination, reconsideration, hearing before an ALJ, and Appeals Council action upon request
20 for review.  20 C.F.R. § 404.900(a)(1)-(4).  This case has reached a final decision that the court
21 can review.
22 However, Plaintiff does not seek application of some finding from a prior final
23 decision.  Were that the case, the doctrine of res judicata might apply to preclude relitigation of a
24 previously decided issue.  See Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir.
25 1985)(holding that the doctrine of res judicata applies to final decisions made by the
26 Commissioner); but see Flaten , 44 F.3d at 1453 (finding that a vacated opinion is not a final

decision). Instead, Plaintiff challenges the evidentiary basis upon which the ALJ issued their final decision.

The ALJ is obligated to consider all of the evidence in the record, not just evidence obtained subsequent to a remand. See Howard, 782 F.2d at 1487. The ALJ selectively applied this rule, incorporating medical evidence obtained prior to the remand order, AT 22, including a previous functional capacity assessment from Dr. Kumar completed on June 1, 2003, to which the ALJ gave substantial weight, AT 23, while failing to discuss the prior vocational expert testimony. The Commissioner's argument that the ALJ should ignore the relevant evidence previously provided by two vocational experts is contrary to the law and results in selective application of the evidence. Such a result is contrary to the ALJ's duty. See Holohan, 246 F.3d at 1207-08 (holding that the ALJ's findings were not supported by substantial evidence when the ALJ selectively relied on some entries in the medical record).

The ALJ committed an additional error as it concerned her evaluation of the vocational expert testimony. In their order of remand issued on January 15, 2004, the Appeals Council specifically directed the ALJ to identify and resolve any conflicts between occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Characteristics of Occupations (COO). AT 286. The ALJ's opinion utterly failed to accomplish this task. Indeed, at no point in her findings does the ALJ even mention the DOT or the COO. Such a careless error, in and of itself, would require remand. Sullivan v. Hudson, 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.")

The ALJ's analysis of the multiple opinions from the vocational experts contained serious flaws that dictate remand. The ALJ failed to provide any rationale for her weighing of the various findings of the vocational experts, summarily dismissing two opinions that led to a conclusion of disability. Furthermore, the hypothetical question posed to the vocational expert

upon which the ALJ did rely failed to incorporate the full extent of Plaintiff's impairments. Remand is required in order to permit proper analysis of and reliance on the expert opinions.

      c. <u>The ALJ's Weighing of the Medical Evidence Was in Error.</u>

The ALJ gave little weight to the medical opinions of Plaintiff's treating physician. AT 24. The ALJ found that this opinion was not supported by objective evidence and that it relied instead upon Plaintiff's subjective complaints. This finding was in error.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester</u>, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen</u>, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. <u>Lester</u>, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes</u>, 881 F.2d at 751). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

/////

As noted above, on April 27, 2004, Dr. Pucelik, found Plaintiff capable of lifting and carrying no more than 5 pounds occasionally, and limited her to rare handling and fingering. AT 358.  On May 18, 2004, Dr. Pucelik found Plaintiff capable of occasionally lifting 5 pounds and rarely lifting 10 pounds.  AT 368.  Dr. Pucelik limited Plaintiff to a maximum of three hours sitting and precluded anything more than rare use of the hands and arms.  AT 369.  According to the key relied upon by Dr. Pucelik, rare means less than one hour per day.  AT 368.

The ALJ gave little weight to this opinion.  AT 24.  In making this determination, the ALJ found that Dr. Pucelik's opinion was not based upon objective evidence in the record, relying instead upon Plaintiff's subjective complaints.  Id.  This finding is without merit because the ALJ failed to articulate clear and convincing reasons for discrediting Plaintiff's subjective complaints.

Credibility determinations do factor into evaluations of medical evidence.  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  When there are legitimate reasons to doubt a plaintiff's complaints, the opinions upon which those complaints are based are also questionable.  See Morgan, 169, F.3d at 602 ("A physical opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))).  It is not clear that legitimate reasons to doubt Plaintiff's credibility exist.

As explained above, clear and convincing reasons must support the determination of Plaintiff's credibility.  Morgan, 169 F.3d at 599.  The ALJ described Plaintiff's constant watching of television and lack of exercise as reasons to discredit her complaints.  This finding is not clear and convincing evidence as the activities highlighted by the ALJ fail to undermine any of Plaintiff's complaints of disabling pain.  Indeed, an inability to do anything other than watch television is consistent with Plaintiff's complaints.

/////

1        Furthermore, it is not apparent that Dr. Pucelik's opinion is not supported by
2   objective evidence.  The ALJ properly noted that some tests failed to detect any significant
3   findings.  Radiology studies done at the time of Dr. Pucelik's opinion showed no significant
4   findings that would support Plaintiff's complaints of pain.  AT 350.  Dr. Pucelik's own
5   examinations returned negative results.  AT 355.  Other doctors questioned Plaintiff's symptoms.
6   AT 343.
7        However, the ALJ also referenced nerve conduction studies showing that Plaintiff
8   suffered from carpal tunnel syndrome.  AT 255.  As noted by Dr. Pucelik, a series of x-rays on
9   Plaintiff's elbow showed degenerative disc disease.  AT 345.  The ALJ is charged with
10  interpreting conflicting evidence in the record.  Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th
11  Cir. 1971).  Such resolution must be supported by substantial evidence.  Fair, 885 F.2d at 604.
12  The ALJ failed to provide any reason that might explain her decision to reject Dr. Pucelik's
13  opinion based upon some of the objective evidence in the record.  Given her basis for rejecting
14  the opinion of Plaintiff's treating physician, reasonable minds cannot accept the ALJ's
15  conclusions.  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842
16  (1971).
17        Objective reasons exist in the record for discounting Plaintiff's complaints.
18  Furthermore, there are inconsistencies between Plaintiff's complaints and her daily activities.
19  For example, Plaintiff stated in her initial application that she was able to walk, stand and sit all
20  day without any problems.  AT 155.  There has been no recommendation of surgery for
21  Plaintiff's carpal tunnel.  AT 64.  Third party observers reported no apparent difficulty with
22  Plaintiff's ability to use her hands.  AT 165.  However, the ALJ did not cite these, or any other
23  reasons supported by substantial evidence in the record as a basis for her findings.  Instead, the
24  ALJ cited two facts that support Plaintiff's complaints and a single observation from treating
25  physician.  The court must rely upon the findings and reasoning provided; it cannot substitute its
26  judgment for that of the ALJ.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ failed to provide sufficient reasons for discrediting Plaintiff's subjective complaints.  The ALJ did not properly identify what aspects of Plaintiff's testimony were not credible, nor did she adequately explain how Plaintiff's activities or behavior undermined her complaints.  Dodrill, 12 F.3d at 918.  The ALJ's credibility determination is not supported by substantial evidence.

As a result, the ALJ provided no supportable basis for discrediting Plaintiff's treating physician.  Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, that opinion is credited "as a matter of law." Lester, 81 F.3d at 834 (citing Hammock, 879 F.2d at 502.  The result is that Plaintiff has the residual functional capacity to occasionally lift 5 pounds and rarely lift 10 pounds.  AT 368.  In addition, Plaintiff can sit for not more than three hours and can use her hands and arms for up to one hour each workday.  AT 369.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross motion for summary judgment is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: October 30, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

13Sims.2502.ss.wpd